**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kasey Markeith Hayes, | No. CV-16-04190-PHX-GMS |
| Petitioner, | **ORDER** |
| v. | |
| Charles L Ryan, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Kasey Markeith Hayes's Petition for Writ of Habeas Corpus. (Doc. 1). Magistrate Judge John Z. Boyle has issued a Report and Recommendation (R&R) in which he recommends that the Court deny the motion. (Doc. 19). Petitioner filed objections to the R&R. (Doc. 22). Petitioner has also filed a Motion for Summary Judgment (Doc. 18), and three Motions to Expand the Record (Docs. 24, 27, 30). Because objections have been filed, the Court will review the record on all relevant matters *de novo*. For the following reasons, the Court adopts the R&R and denies the motion, dismisses the Motion for Summary Judgment as moot, and denies in part and dismisses as moot in part the Motions to Expand the Record.

## BACKGROUND

On October 10, 2012, Petitioner was convicted by a jury in the Maricopa County Superior Court on two counts: one count of molestation of a child and one count of sexual conduct with a minor[1]. Petitioner was convicted of going into the room of the

---
[1] *State v. Hayes*, CR-2011-156151-001-DT.

fourteen-year-old victim, with whom he lived, , placing his fingers inside the victim's vagina, and placing the victim's hand on top of his penis and then masturbating with it. The Petitioner and the victim both testified at the trial. A sexual assault nurse examiner testified that there were injuries to the victim's vagina that were consistent with the victim's detail of the assault. A criminalist testified that semen matching the Petitioner was found on the pillow and comforter from the victim's bed. Petitioner was sentenced to twenty years on the charge of sexual conduct with a minor and ten years on the charge of molestation of a child, with the sentences to run consecutively.

On May 7, 2013, Petitioner filed a direct appeal to the Arizona Court of Appeals.[2] The direct appeal raised three issues: (1) whether the trial court abused its discretion in granting the State's motion to amend the indictment; (2) whether the evidence provided established guilt beyond a reasonable doubt; and (3) whether Petitioner was denied a fair trial due to the prosecutor's conduct during a witness examination. The Court of Appeals affirmed the convictions and Petitioner did not file for review in the Arizona Supreme Court. On July 29, 2015, Petitioner filed a Notice of Post-Conviction Relief ("PCR"). Petitioner's *pro se* PCR petition was filed on March 7, 2016. The PCR petition raised three issues: (1) due process violations due to victim perjury and Petitioner's actual innocence; (2) prosecutorial misconduct by suborning perjury; and (3) ineffective assistance of counsel. The trial court denied the PCR petition on June 16, 2016. A Motion for Rehearing was denied on November 1, 2016, and Petitioner did not file for review in the Arizona Court of Appeals.

This federal habeas petition brought under 28 U.S.C. § 2254 was timely filed on November 14, 2016. Petitioner raises four grounds: (1) actual innocence and due process violations from the victim's perjury; (2) a *Brady* violation from the State failing to disclose a photo of the victim's injury; (3) a *Brady* violation from the State presenting inadmissible DNA evidence at trial; and (4) ineffective assistance of counsel. (Doc. 1).

///

---

[2] *State v. Hayes*, No. 1 CA-CR 13-0304 (Ariz. Ct. App. 2015).

**DISCUSSION**

**I. Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court may not grant habeas relief unless Petitioner has exhausted his claims in state court, there is an absence of available state corrective process to exhaust the claim, or circumstances exist which render the state process ineffective to protect Petitioner's rights. 28 U.S.C. § 2254(b)(1).[3] Nor may the Court grant habeas relief unless the state's adjudication of the claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1); *see Baldwin v. Reese*, 541 U.S. 27, 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "The Supreme Court has said that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). If a petitioner files timely objections to the magistrate judge's R&R, the district judge must make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which the objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

**II. Analysis**

Petitioner files four objections to the Magistrate Judge's R&R. First, the Petitioner argues that he did not procedurally default his claims because the trial court sealed an order that the Petitioner needed to go to the Arizona Court of Appeals. Second, the Petitioner argues that the record lacks any testimonial evidence from the victim to

---

[3] The Court, however, may deny the claim on the merits even if it is unexhausted. 28 U.S.C. § 2254(b)(2); *see Duncan v. Walker*, 533 U.S. 167, 183 (2001) (J. Souter concurring) (stating that the "AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims").

support the R&R's discussion of the possible timing of the assault. Third, Petitioner argues that the state courts did not explain their reasoning as to why Petitioner's claims regarding the photos of the victim's injuries were denied. Finally, Petitioner also argues that the state courts did not explain the reasoning as to why Petitioner's claims regarding the DNA evidence were denied.

### A. Procedural Default

Petitioner did not appeal the trial court's decision in the PCR proceeding. To exhaust state remedies, a petitioner must afford state courts the opportunity to rule on the merits of the federal claims. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). A petitioner who has procedurally defaulted claims may still have those claims reviewed by the federal courts if (1) the petitioner establishes "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) that a "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). "Cause is a legitimate excuse for the default; prejudice is actual harm resulting from the alleged constitutional violation." *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). In Arizona, "claims of Arizona state prisoners are exhausted for the purpose of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). The claims raised by Petitioner in the PCR proceedings were distinct from the claims raised on Petitioner's direct appeal. As such, Petitioner's failure to seek review of the PCR ruling means that the claims are both unexhausted and procedurally defaulted. Because of filing deadlines, Petitioner cannot return to the state courts to seek review. *See* Ariz. R. Crim. P. 32.9(c)(1)(A) ("No later than 30 days after the entry of the trial court's final decision on a [PCR] petition or a motion for rehearing, an aggrieved party may petition the appropriate appellate court for review of the decision."). The trial Court denied Petitioner's Motion for Rehearing on November 1, 2016; Petitioner did not seek review within the thirty day limit set by statute.

Petitioner claims that the R&R failed to address "the fact that the trial court sealed up the last order the Petitioner needed to go to the Arizona Court of Appeals per Rule 32.9(c) in a minute entry for the record not the Petitioner." (Doc. 22, p. 2). Petitioner's Reply to the Petition for Writ of Habeas Corpus states that he never received a copy of the minute entry in which the Motion for Rehearing was denied, and thus Petitioner did not know that that he could file an appeal. (Doc. 17, p. 2). Assuming that Petitioner could establish that he was otherwise ignorant of his right to appeal,[4] and that he has thus established cause for his default, a petitioner must also establish actual prejudice from the constitutional violations. *Magby*, 741 F.2d at 244. Of the four grounds raised in Petitioner's habeas petition, only Ground One (actual innocence and due process violation from victim's perjury) and Ground Four (ineffective assistance of counsel) were raised in front of the PCR trial court, and thus impacted by the Petitioner's failure to seek an appeal of the PCR ruling.[5] Petitioner cannot show actual prejudice resulting from the alleged constitutional violations. Multiple courts have reviewed Petitioner's claims of the victim's perjury and all have found that there was sufficient evidence for the jury to find the Petitioner guilty. This Court agrees. The jury was presented with testimony from the victim, the victim's family, and the Petitioner. The jury was competent to evaluate all the witnesses and their credibility. Petitioner's claim of ineffective assistance of counsel also fails to establish prejudice. Petitioner alleges that his trial counsel was unconstitutionally ineffective by failing to highlight the victim's multiple phone calls on the night of the assault. Petitioner has not demonstrated that he was prejudiced by his trial counsel's decision and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Trial counsel may have elected not to highlight the fact that the victim was on the phone with a male friend, albeit not the one she initially stated, right before the time of the assault.

---

[4] Petitioner offers no argument that he sought relief in the state courts upon learning that the Motion for Rehearing had been denied and that the time to file an appeal had expired.
[5] The *Brady* violations alleged in Grounds Two and Three were raised for the first time in the habeas filing. These claims are unexhausted and procedurally defaulted, but the Petitioner's claim of cause for procedural default due to not being informed of the timeline to appeal is inapplicable to claims that were not raised in the PCR proceeding.

Such "strategic choices must be respected . . . if they are based on professional judgment." *Id*. at 681. Thus, the Court determines that even if Petitioner established cause for his procedural default, he has not established actual prejudice resulting from the alleged constitutional errors.

## B. Victim's Testimony

Petitioner's second objection argues that the record "lacks any testimonial evidence from [the victim] to support moving the time of the alleged incident to 10:30 pm from 8:40 pm." (Doc. 22, p. 2). The victim testified that the assault occurred after a phone call with her boyfriend, Chris, and that after the assault, the victim fled the house. Phone logs introduced at trial showed that the victim had a brief call with Chris around 8:40 p.m. The victim also spoke with another male friend, B.A., from 10:35 p.m. to 10:58 p.m. On appeal, Petitioner has argued that these phone records establish that the victim was lying since she did not leave the home after talking with Chris. Petitioner asserts that the second phone call evidences that the victim did not leave the house after the assault. As both the trial court and the magistrate judge determined, however, the jury apparently concluded that the victim left the home after the phone call with B.A., as this chronology lines up with the chronology the Defendant offered in his own trial testimony. Petitioner raised the claim of the sufficiency of the evidence, including perjury by the victim in the Arizona Court of Appeals, which considered the issue on the merits. Petitioner also raised the claims of perjury and actual innocence to the PCR trial court; Petitioner did not appeal the PCR court's decision to the Arizona Court of Appeals, so that claim is not exhausted and is procedurally defaulted. (Doc. 10, Exs. G, N).

Petitioner can avoid the procedural default bar if he can show that "a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent of the offense." *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray*, 477 U.S. at 496). Petitioner has not established his actual innocence. As the PCR trial court noted, the Exhibit containing the phone logs was admitted during Petitioner's trial. (Doc. 10, Ex. N). The jury had the evidence of the timing of the victim's calls which they could

have considered in evaluating the witnesses' credibility. Thus, Petitioner has not shown that "no reasonable factfinder would have found the defendant guilty beyond a reasonable doubt." *Id*. It was for the jury to decide the credibility of the witnesses and the strength of the evidence.

To the extent that some of Petitioner's claims were decided on the merits by the Arizona Court of Appeals, this Court cannot overturn it unless the decision was "contrary to" federal law or it was an "unreasonable determination of the facts in light of the evidence presented" in the state court. 28 U.S.C. § 2254(d). The Arizona Court of Appeals determined that there was sufficient evidence for a reasonable juror to find Petitioner guilty. (Doc. 10, Ex. G). This Court cannot conclude that was an unreasonable determination of the facts. The jury heard testimony from the victim, the Petitioner, a nurse examiner, and a criminalist. The jury had before it evidence to evaluate the timeline of the assault and both the victim and the Petitioner's credibility. The Arizona Court of Appeals' determination that there was sufficient evidence to result in a conviction was reasonable.

### C. Photographic Evidence

Petitioner argues that the "state courts failed to address the exist[ence] of the coloscope photo. The state courts merely stated it was a[n] uncolorable claim without stating why." (Doc. 22, p. 3). Petitioner's argument is that the State's use of a computer-generated image of a vagina instead of the actual photo of the victim was a due process and *Brady* violation. (Doc. 1, p. 7). A *Brady* violation has three elements: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) "prejudice must have ensued." *United States v. Price*, 566 F.3d 900, 907 (9th Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). The sexual assault examination notes state that the victim was examined using a coloscope and that digital photography was done. (Doc. 10, Ex. O). The Petitioner raised this claim for the first time his Motion for Rehearing of the PCR ruling. The trial

court considered the newly raised argument and found that there was no newly discovered evidence and that photography evidence would likely not have changed the verdict. (Doc. 10, Ex. P). Petitioner's failure to appeal the ruling and exhaust his claims in state court results in procedural default. Nor does Petitioner establish that these photos would have been favorable to the accused, were suppressed by the state, and that prejudice resulted.

### D. DNA Evidence

Petitioner also objects to the state court's failure to address his second alleged *Brady* violation relating to the DNA evidence. During trial, the State presented evidence that Petitioner's semen was found on the victim's bedding. According to Petitioner, cross-examination of the witness revealed that the DNA was 24 to 48 hours old, and thus, must have gotten on the sheets and pillow prior to the assault. Petitioner claims that this exculpatory information was not in discovery prior to trial. As with the other *Brady* claim, the Petitioner raised this claim for the first time his Motion for Rehearing of the PCR ruling. The trial court considered the newly raised argument and found that there was no newly discovered evidence that would have changed that verdict. (Doc. 10, Ex. P). Petitioner's failure to appeal the ruling and exhaust his claims in state court results in procedural default. Moreover, to succeed on a *Brady* claim, the Petitioner must show that prejudice ensued from the suppression of the exculpatory evidence. *Price*, 566 F.3d at 907. Petitioner's claim asserts that this alleged deficiency in the DNA evidence was revealed during cross-examination. Therefore, the jury was able to consider arguments about the quality of the DNA evidence when deliberating. The Court cannot find that prejudice resulted, given that the jury was able to consider the timeline of when the DNA was deposited on the bedding.

### E. Motions to Expand the Record

Petitioner filed three motions seeking to expand the record. In the first motion, Petitioner requests to expand the record to include five excerpts of transcripts from the

trial. (Doc. 24, p. 4). The trial transcripts are already part of the record. The Court dismisses this request as moot.

The Petitioner also wants to include a telephone interview with Chris, the victim's boyfriend. The telephonic interview with Chris took place approximately two weeks after the assault. In that interview Chris states that the victim did not tell him about anything involving the police that he and the victim spoke regularly, and that he and the victim had engaged in phone sex but that he doubted the victim touched herself during such conversations. This interview does not further the Petitioner's claims of actual innocence, and so the Court will not add it to the record. The interview with Chris is only relevant to Ground One of Petitioner's habeas petition: actual innocence and due process violations from the victim's perjury. The Arizona Court of Appeals considered Petitioner's argument that the victim fabricated the assault and nonetheless determined that there was sufficient evidence to convict. The telephonic interview with Chris cannot be considered in the Court's review of that claim. Petitioner's claim of actual innocence was procedurally defaulted, and therefore not considered on the merits. The Court declines to expand the record. Additionally, where the "applicant has failed to develop the factual basis of a claim in State court proceedings," the applicant must show that "the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). Petitioner does not explain why these police investigative reports were not discovered and raised during earlier phases of the trial and the appeals. The Court denies the motion as to the interview record.

The second Motion to Expand the Record (Doc. 27) seeks to add two pieces of evidence to the record. The Petitioner wants to add a trial transcript of the victim's mother's testimony. This is already part of the record, and so the Court dismisses this request as moot. The Petitioner also wants to add a CD recording of an interview between the victim's mother and an officer. In this interview, the victim's mother allegedly says that she returned home at 11:00 p.m. the night of the assault. Petitioner argues that this supports his claim of actual innocence. Presumably, Petitioner is arguing that if the

assault took place around 11:00 p.m. instead of 8:40 p.m. (which the PCR court considered in light of the victim's phone records), the fact that the victim's mother stated that she saw Petitioner outside when she arrived home at 11:00 p.m. demonstrates that the crime could not have taken place at 11:00 p.m. As stated above, however, the jury apparently accepted a different chronology and at any event, Petitioner does not establish that these facts could not have been previously discovered through the exercise of due diligence. The Court declines to expand the record and denies the motion as to the CD.

The third Motion to Expand the Record (Doc. 30) requests that the Court include trial transcripts reflecting the final jury instructions. Petitioner argues that the jury instructions impermissibly lacked a definition of sexual intent. *Id*. at p. 2. Petitioner also cites to various parts of trial transcripts where witnesses testified that the Petitioner and the victim had a difficult relationship. *Id*. at p. 3. The jury instructions and trial transcripts were part of the state court record, and so the record need not be expanded. (Doc. 32). Neither the jury instructions nor the trial testimony bolster Petitioner's claim. Petitioner asserts that the trial transcripts assist his claim in Ground One of actual innocence. The testimony does not prove actual innocence. Moreover, the jury heard the testimony and was able to consider the nature of the relationship between Petitioner and the victim and their credibility. A tense relationship does not necessarily mean that the victim was lying and committed perjury. The Arizona Court of Appeals and the PCR court determined that there was sufficient evidence for the jury to convict the Petitioner. The jury instructions have never been challenged by the Petitioner. Any claims about them are unexhausted. Briefly, the Court notes that jury instructions for both crimes that the Petitioner was convicted of include a mens rea of "intentionally or knowingly" and definitions of both states of mind. (Doc. 30, Ex. A, pp. 6–7). The Court denies the Motion.

## CONCLUSION

Petitioner's objections to the R&R are without merit. Petitioner procedurally defaulted his claims by failing to appeal the PCR ruling to the Arizona Court of Appeals. Further, the Petitioner has not established that the alleged *Brady* violations resulted in

- 10 -

prejudice to him. The Magistrate Judge and the PCR trial court have not "moved" the time of the assault; rather, they evaluated the evidence and whether a reasonable juror could have found the Petitioner guilt. The Court dismisses the Motion for Summary Judgment as moot. Finally, the Court dismisses as moot the request to expand the record to include trial transcripts already in the record, and the Court denies the motions to add evidence that could have been previously discovered through the exercise of due diligence.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Report and Recommendation (Doc. 19) is **ADOPTED** and the Petition for Writ of Habeas Corpus of Kasey Markeith Hayes (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Motion for Summary Judgment of Kasey Markeith Hayes (Doc. 18) is **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that the Motions to Expand the Record of Kasey Markeith Hayes (Docs. 24, 27, 30) are **DENIED IN PART AND DISMISSED AS MOOT IN PART**.

Dated this 1st day of June, 2018.

Honorable G. Murray Snow
United States District Judge